Felicia Medina (SBN 255804)
fmedina@medinaorthwein.com
Jennifer Orthwein (SBN 255196)
jorthwein@medinaorthwein.com
MEDINA ORTHWEIN LLP
1322 Webster St #200
Oakland, CA 94612
Telephone: (510) 679-2145; Facsimile: (510) 217-3580

David Sanford (*Pro Hac Vice* forthcoming)
dsanford@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
1666 Connecticut Ave NW #300
Washington, DC 20009
Telephone: (202) 499-5200; Facsimile: (202) 499-5199

Xinying Valerian (SBN 254890)
xvalerian@sanfordheisler.com
Kevin Love Hubbard (SBN 290759)
khubbard@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020; Facsimile: (415) 795-2021

*Attorneys for Plaintiff Zola Mashariki*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOLA MASHARIKI,<br><br>       Plaintiff**,**<br><br>v.<br><br>VIACOM INC.; BLACK ENTERTAINMENT TELEVISION, LLC; and STEPHEN HILL,<br><br>      Defendants. | Case No.: 2:17-cv-03366<br><br>**COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELEIF FOR:**<br><br>  1. Violation of Title VII: Gender Discrimination; Hostile Work Environment; Retaliation; and Wrongful Termination (42 U.S.C. § 2000(e) *et seq.*)<br><br>  2. Violation of the Family Medical Leave Act: Interference and |

Retaliation (29 U.S.C. § 2601, *et seq.*)

3.  Violation of the Equal Pay Act (29 U.S.C. § 206, *et seq.*)

4.  Violation of the California Fair Employment and Housing Act: Gender Discrimination; Hostile Work Environment; Retaliation; Failure To Prevent Harassment; and Wrongful Termination (Cal. Govt. Code section 12940 *et seq.*)

5.  Violation of the California Family Rights Act: Interference and Retaliation (Cal. Govt. Code section 12945.1 *et seq.*)

6.  Violation of the California Equal Pay Act (Cal. Labor Code section 1197.5 *et seq.*)

7.  Breach of the Implied Covenant of Good Faith and Fair Dealing

8.  Wrongful Discharge in Violation of Public Policy

9.  Defamation

**DEMAND FOR JURY TRIAL**

Plaintiff Zola Mashariki ("Plaintiff" or "Ms. Mashariki"), by her attorneys, brings this action against Defendants Viacom Inc. ("Viacom"), Black Entertainment Television, LLC ("BET") (collectively, the "Company"), and Stephen Hill ("Defendant Hill") (all together, "Defendants"). Ms. Mashariki brings claims for gender discrimination, hostile work environment, retaliation, interference with protected medical leave, unequal pay, wrongful termination, breach of the duty of good faith and fair dealing, and defamation that stem from Defendants' wanton and reckless actions since she started working for the Company in May 2015 as Executive Vice President ("EVP") and Head of Original Programming.

1.      Ms. Mashariki is a graduate of Dartmouth College and Harvard Law School.  She attended USC's Peter Stark Producing Program before establishing herself as one of the entertainment industry's most sought-after creative minds.  During her nearly 20 years in show business, Ms. Mashariki was the production executive behind Golden Globe and Academy Award-nominated films such as *The Best Exotic Marigold Hotel*, *The Savages*, *The Secret Life of Bees*, and *In America*.  Ms. Mashariki brought this preeminent expertise to BET as its Head of Original Programming.  Despite bringing top talent to the network and revamping its original programming, Viacom, BET, their Human Resources departments, and Company executives subjected Ms. Mashariki to gender discrimination and harassment.  On top of this, Defendants then retaliated against her when she complained about the unlawful treatment.

2.      In December 2016, Ms. Mashariki told BET and Viacom that she had been diagnosed with early stage breast cancer.  Ms. Mashariki took medical leave on February 6, 2017 for surgery to treat her illness.  While on leave, she learned she had a second, more severe type of breast cancer which would require additional surgeries and extension of her medical leave.  Viacom and BET then escalated their retaliation against her, interfered with her protected leave, and questioned the validity of her illness.  While Ms. Mashariki was recovering from her second surgery, the Company falsely announced that she would be departing the Company and then falsely suggested that she had been terminated for "performance issues," despite Ms. Mashariki's outstanding performance reviews and the quality original programming she delivered, from which Defendants continue to profit.

3.      Adding insult and further injury, the Company unlawfully terminated Ms. Mashariki while she was still on protected medical leave and flagrantly disregarded her rights under the FMLA and the CFRA.  BET's and Viacom's treatment of Ms. Mashariki has been egregiously reckless and inhumane.  For that reason, Ms. Mashariki brings these claims to hold Defendants and their Human Resources departments accountable, as detailed below.

## I.      **INTRODUCTION**

4.      Plaintiff Zola Mashariki is a seasoned and accomplished black female Hollywood executive.  Ms. Mashariki's nearly 20 years in the entertainment industry include a 15-year tenure at the independent film label Fox Searchlight Pictures before her time at BET.  While many successful independent films gross $5-10 million dollars, Ms. Mashariki's films averaged $25 million dollars in box

office grosses.  Her highest grossing film, the Golden Globe-nominated *The Best Exotic Marigold Hotel*, made over $100 million dollars worldwide—a feat nearly unheard of in independent cinema.

5.     Ms. Mashariki left her Academy Award-winning company behind because, as woman of color, BET's brand spoke to her.  It offered her the unique opportunity to focus her talents, experience, and professional network on strengthening the voice and increasing the visual representation of African Americans and other African Diasporans in the media.  Ms. Mashariki brought to BET her expertise making compelling content for this audience, including successful films such as *Brown Sugar*, *Antwone Fisher*, *Notorious*, and *Just Wright*.

6.     Despite her expertise, Ms. Mashariki soon learned that women, especially women of color, are not safe from workplace discrimination and harassment at BET.  Rather, Viacom, BET, and the mostly male leaders at both companies, foster a culture in which women, including Ms. Mashariki, are systematically discriminated against, harassed, intimidated, attacked, and exploited.  Ms. Mashariki, like many other women at the Company, was exploited for her around-the-clock work while men reaped the benefits and credit.   Male executives, specifically Defendant Stephen Hill, BET's President of Programming, encouraged conflict on Ms. Mashariki's team and sought to disempower and demote her.

7.     Viacom, its Human Resources ("HR") department, and its Executive Vice President of HR and Administration, Scott Mills, ratified and protected Defendant Hill as he repeatedly targeted and drove out women, especially women of color, whom he found threatening.  Defendant Hill did so in order to exploit these women's successes and divert attention away from his own uneven performance.  Ms. Mashariki's creative expertise further exposed Defendant Hill, so he harassed Ms. Mashariki to damage her future at BET.

8.     Upon information and belief, several other women have reported Defendant Hill's unlawful conduct to HR, the leadership at Viacom and BET, and management on several occasions.  Rather than address Defendant Hill's discrimination and harassment, Viacom and BET have historically developed and advanced Defendant Hill, despite his lacking qualifications and performance deficiencies.

9.     Ms. Mashariki refused to be intimidated by Defendant Hill's harassment and reported him to HR.  Within weeks of her first complaint, Viacom's HR department began to retaliate against Ms. Mashariki.   Prior to the complaint, Ms. Mashariki received an outstanding performance review in

December of 2015, praising her for "instill[ing] a confidence" in her team that was "sorely needed" and concluding that she was "very successful and put [BET] in position to thrive."  However, a few weeks after she reported Defendant Hill's harassment, Viacom's HR suddenly claimed that Ms. Mashariki was not liked by her peers and subordinates, and subjected her to retaliatory performance management.

10.    Nevertheless, Ms. Mashariki persisted.  Indeed, she excelled at the Company.  She developed a slate of new content including an unprecedented number of piloted shows and some of the highest testing content in BET's history.  After BET's Upfront 2016, a key annual meeting of executives and advertisers, Head of Sales Louis Carr commented that sales of Ms. Mashariki's content were "so successful, it was scary."  In Defendant Hill's own words, Ms. Mashariki's performance at the Company was nothing short of "stellar."

11.    Ms. Mashariki was diagnosed with early breast cancer in December 2016, and promptly informed BET of her diagnosis.  Despite her illness, Ms. Mashariki continued to work tirelessly until February 6, 2017, the day of her surgery, when Ms. Mashariki began protected medical leave.  While on leave, Ms. Mashariki was diagnosed with a second, more severe, type of breast cancer that required additional treatment and a longer leave.  With neither evidence nor cause, the Company questioned the validity of her diagnosis, interfered with her short-term disability request, prevented members of her team from contacting her, and deliberately damaged her reputation.  When Ms. Mashariki was at her weakest moment, Viacom, BET, and Defendant Hill escalated their retaliation against her, proffering that due to her disability, she could no longer represent BET.

12.    If Viacom's and BET's actions with respect to her leave were not enough, upon information and belief, a senior executive at BET suggested to Ms. Mashariki's colleagues that she was "faking" her breast cancer.  These false and reprehensible statements caused irreparable damage to Ms. Mashariki by suggesting that she was a liar attempting to avoid the duties of her office.

13.    Viacom and BET went even further beyond the pale: while she intended to return to work following her leave, the Company falsely and publicly announced on March 29, 2017, that she would be departing the network.  Viacom and BET compounded their defamatory actions by having BET's Senior Vice President of Communications, Tracy McGraw, falsely "confirm" to the press on its behalf that Ms. Mashariki was no longer with the Company.  Ms. McGraw made this statement in conjunction with a BET

insider falsely suggesting that Ms. Mashariki's alleged termination was somehow because of her performance.  These statements invited public attention and speculation into the circumstances of Ms. Mashariki's departure from BET, resulting in irreparable damage to Ms. Mashariki's career and reputation in the midst of her breast cancer recovery.

14.    The Company then refused to return Ms. Mashariki to her position following her protected leave—terminating her while she was on leave and unable to work because she was recovering from surgery.  The Company also failed to comply with the requirements of her contract when it terminated her.  The Company's termination was obviously retaliatory.  At the time of termination, Ms. Mashariki's salary was being paid entirely by her short-term disability insurance coverage; there was no cost to the Company.

15.    Ms. Mashariki now seeks legal redress from a jury for the many violations of her civil rights.  Specifically, Ms. Mashariki seeks to remedy the gender discrimination and harassment she witnessed and experienced at BET, magnified because she is a woman of color, and the retaliation she was subjected to when she complained; to remedy the discrimination and retaliation she faced after taking protected medical leave; to remedy the fact that the Company paid Ms. Mashariki less than male comparators for substantially similar work; to reinstate her standing at the Company; to remedy the Company's subversion of Ms. Mashariki's rights under her employment contract; and to remedy the defamation to which Defendants subjected her.

16.    Ms. Mashariki is seeking all legal and equitable relief available under state and federal anti-discrimination, equal pay, retaliation, and protected leave statutes, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, as amended ("Title VII"); the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, ("FMLA"); the Fair Labor Standards Act, as amended by The Equal Pay Act, 29 U.S.C. § 206, *et seq.* ("EPA"); the California Fair Employment and Housing Act, Cal. Govt. Code section 12940 *et seq.*, ("FEHA"); the California Family Rights Act, Cal. Govt. Code section 12945 *et seq.*, ("the CFRA"); and the California Equal Pay Act, as amended by the California Fair Pay Act, Cal. Labor Code section 1197.5 *et seq.*

## II.   THE PARTIES

17.    **Plaintiff Zola Mashariki** is a woman who, at all times relevant to this action, lived and worked in Los Angeles, California.  Ms. Mashariki joined BET as an Executive Vice President and Head of Original Programming on May 1, 2015.

18.    **Defendant Viacom** is registered as a corporation that conducts business in California.  Viacom is a Delaware corporation with its principal place of business in New York, New York and offices in Los Angeles, California.

19.    **Defendant BET**, a wholly-owned subsidiary of Viacom, is registered as a corporation that conducts business in California.  BET is a Delaware limited liability company with its principal place of business in Washington, D.C., and offices in Los Angeles, California.

20.    **Defendant Stephen Hill** was the President of Programming at BET, and was assigned by Viacom and BET to be Ms. Mashariki's supervisor at all relevant times.

## III.   JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f) because unlawful employment practices occurred in California and a substantial part of the events giving rise to the claims occurred in Los Angeles County.

23.    Ms. Mashariki duly filed her administrative charge before the California Department of Fair Employment and Housing ("DFEH") and received her Notice of Case Closure and Right to Sue on April 2, 2017.  Ms. Mashariki also filed an administrative charge before the U.S. Equal Employment Opportunity Commission ("EEOC") on April 21, 2017 and received her Right to Sue on April 27, 2017.

## IV.   FACTUAL ALLEGATIONS

24.    On May 1, 2015, Ms. Mashariki began her employment with BET as an EVP and Head of Original Programming.

25.    Prior to entering the entertainment industry, Ms. Mashariki graduated from Dartmouth College and Harvard Law School and practiced corporate law at two prestigious law firms.  Ms. Mashariki went on to attend film school at the University of Southern California and later joined its faculty part-time in the School of Cinematic Arts (Film and Television) where she teaches a course "Advanced Producing"

to graduate students.  In 2000, Ms. Mashariki started at Fox Searchlight as an intern and worked her way up to become Senior Vice President of Production, before joining BET in 2015.

26.     At BET, Ms. Mashariki dedicated herself to her job and distinguished herself as a top performer.  Using her experience and relationships, Ms. Mashariki brought BET some of the highest caliber talent in the history of the network.  During her first four months, Ms. Mashariki identified, developed, and presented an entire slate of new shows for Upfront 2016.  The outstanding performance of Ms. Mashariki and her team resulted in an unprecedented number of piloted shows at BET at an unprecedented pace.  In addition, she developed, delivered, and managed the creative process of *The New Edition Story*, which became BET's highest rated show in the last five years, as well as its highest testing show ever among men and the second-highest testing show in BET history.  *The Quad* also tested exceptionally well, as did *Rebel*.

27.     As detailed herein, despite Ms. Mashariki's performance, the Company has discriminated and retaliated against her because of her gender, complaints of discrimination, and need for medical leave.

**A.     The Company's Misogynistic Culture Oppresses Women in the Workplace.**

28.     Women are grossly underrepresented in leadership positions at the Company.  The executive leadership of the Company is overwhelmingly male.  Before Defendant Hill left BET, seven of the ten members of its executive team were men.  Viacom has a similar overrepresentation of male executives, as six of the nine members of its senior management team are men.  Development opportunities, including roles on critical committees, are routinely offered to male executives rather than their female counterparts.

29.     The Company fosters a good old boys' club atmosphere and mentality that are hostile to women and their advancement.  This misogynistic culture, which marginalizes, demeans, and undervalues women, begins at the top of the corporate structure.  Defendant Hill was a well-known member of the Company's good old boys' club.  Defendant Hill has been permitted to systematically discriminate against and harass numerous women.  He is protected by the Company's old boys' club and HR department.  It is no coincidence that Scott Mills, Viacom's EVP of HR and Administration, is a former senior executive at BET and close friend of Defendant Hill.  By turning a blind eye to the previous complaints about

1  Defendant Hill, and allowing Defendant Hill's unlawful conduct to continue unchecked, HR failed to

2  address and prevent the discrimination and harassment that Ms. Mashariki and other women faced.

3          30.    Defendant Hill took advantage of and credit for overqualified female executives'

4  contributions, including Ms. Mashariki, while treating them like administrative support.  Despite Ms.

5  Mashariki effectively performing the duties of Defendant Hill's job as President of Programming,

6  Defendant Hill also required Ms. Mashariki to perform low-level administrative work for him, which he

7  did not demand from similarly situated male employees.  In addition to running the Original Programming

8  group, Ms. Mashariki was also required to update Defendant Hill daily to educate him on granular details

9  of her work.  Defendant Hill would then use these extensive briefings to take credit for Ms. Mashariki's

10  work.  In contrast, Ms. Mashariki's EVP counterparts meet directly with the CEO every other week to

11  provide updates.  When Ms. Mashariki was on leave and Defendant Hill could not appropriate her

12  contributions, his performance declined.

13          31.    Defendant Hill's degrading treatment of women is further reflected in his hostile demeanor

14  towards women.  He did not intimidate or threaten Ms. Mashariki's male colleagues, nor did he attempt

15  to undermine them as he did with Ms. Mashariki.  Not to be outshined by a woman, Defendant Hill

16  disrupted meetings led by Ms. Mashariki and frequently interjected himself and his male mentees into her

17  projects once those projects became high-profile.  For instance, Defendant Hill insisted that he play an

18  onscreen role in one of BET's shows, compromising the integrity and budget of the show.  Defendant Hill

19  often empowered male subordinates of Ms. Mashariki to contradict her instructions and requests.  These

20  interferences caused significant disruption, confusion, and financial damage to the Company.

21          32.    Defendant Hill regularly attempted to exclude Ms. Mashariki from decision-making

22  conversations vital to the management of her department.  Specifically, Defendant Hill excluded and/or

23  discouraged her from attending senior-level meetings about content she was developing, upfront meetings,

24  budget meetings, and discussions surrounding BET's new office design.  In doing so, Defendant Hill put

25  Ms. Mashariki in the impossible position where she was excluded from key meetings yet expected to

26  deliver.  In contrast, Defendant Hill's only male direct report was not excluded from these meetings,

27  despite him being Ms. Mashariki's subordinate.  Upon information and belief, Defendant Hill also

28  excluded other female direct reports from key meetings related to their work.  In addition to excluding

Ms. Mashariki from decision-making conversations, Defendant Hill withheld important information from Ms. Mashariki, which made it more difficult for her to perform the roles and responsibilities of her position.

33.     Ms. Mashariki is not alone in her experiences with Defendant Hill.  One of Ms. Mashariki's female indirect reports complained that Defendant Hill's gendered micromanagement created a hostile work environment.  A highly skilled female SVP complained that Defendant Hill reduced her role to "making charts and graphs" when he took over as President of Programming.  Several female employees have reported to Ms. Mashariki that they felt intimidated and dominated by Defendant Hill.  One female senior level employee described Defendant Hill as "keeping his boot on the back of her neck."  Another high-level female employee has expressed concern that she was laid off after months of similar interference from Defendant Hill.  A high-performing female VP complained that Defendant Hill subjected her to heightened scrutiny and targeted her with performance management, including a low performance review, as soon as he became her supervisor.  Upon information and belief, Defendant Hill was required to work with a professional coach due to previous complaints of inappropriate yelling and aggression towards women.

34.     The Company protected Defendant Hill, condoning his discriminatory and retaliatory conduct and decisions, despite its knowledge of his history of repeat harassment.

**B.     The Company Required Ms. Mashariki to Perform More Work for Less Pay and a Lower Title than Mr. Hill.**

35.     The Company also denied Ms. Mashariki equal employment opportunities, including pay, development, and promotion, compared to similarly situated male employees.

36.     Prior to her employment at BET, the Company recruited Ms. Mashariki by initially offering her a role as President of Original Programming.  Ms. Mashariki was interested in a leadership role with creative autonomy.  After offering the position to Ms. Mashariki, the Company gave the title of President of Programming to Defendant Hill.  Ms. Mashariki was offered a demoted EVP title, which she initially turned down.  After Ms. Mashariki protested, the Company assured her that she would have autonomy over the creative process.  She eventually accepted a newly created EVP role once the Company agreed to change the title to EVP and Head of Original Programming.

37.     Unlike Ms. Mashariki, Defendant Hill lacked the expertise, relationships in the industry, and development experience required to oversee Original Programming and the creative process. Furthermore, Defendant Hill's tenure with the Company was characterized by moderate successes.  In the years leading up to his promotion, the ratings for Defendant Hill's original programming shows were in steady decline and far too many of his decisions caused the Company to lose *millions* in revenue.  Upon information and belief, Defendant Hill's personnel file is rife with complaints from employees and external partners.  In fact, several producers and actors have explicitly refused to work with Defendant Hill.

38.     The Company consistently represented that Ms. Mashariki's EVP role had the same job duties and responsibilities as the President role that she was originally offered.  As an EVP, Ms. Mashariki was underpaid given her President-level responsibilities and contributions as compared to similarly situated male employees who performed equal or substantially similar work requiring an equal or substantially similar composite of skill, effort, and responsibility.  Indeed, Defendant Hill relied on Ms. Mashariki to fulfill his own duties and responsibilities.  Ms. Mashariki has de facto performed the duties and responsibilities of the President of Original Programming for substantially less pay.

## C.     The Company Retaliated Against Ms. Mashariki After She Protested and Reported Unlawful Discrimination and Harassment.

39.     On March 10, 2016, Defendant Hill verbally attacked and threatened Ms. Mashariki when she demonstrated "disobedience" by not immediately forwarding an email that she had not yet opened or reviewed.  When Ms. Mashariki explained that she had been in meetings and would forward the email when she got back to her office, Defendant Hill began to berate Ms. Mashariki, yelling expletives and shouting, "You really want to go there with me?"  Ms. Mashariki was taken aback by Defendant Hill's use of threatening, combative, and demeaning actions and words against her in the workplace.  Ms. Mashariki attempted to deescalate the conversation to no avail.  Rather than maintaining a respectful and professional demeanor towards Ms. Mashariki, Defendant Hill continued to degrade Ms. Mashariki. Defendant Hill would not have felt so entitled, and would have respected Ms. Mashariki's boundaries, if she were a man, nor would he have spoken to her in such a disrespectful manner.  After the meeting, Ms. Mashariki was traumatized and visibly shaking.

40.     The next day, Ms. Mashariki reported the incident to BET's Head of HR, Cheena Stanley. In response, Ms. Stanley agreed that Mr. Hill's behavior crossed the line and that he threatened Ms. Mashariki, but only offered to "speak to" Defendant Hill.  This proposed solution was insufficient to respond to Defendant Hill's conduct, and was not reasonably calculated to end the harassment.  This is particularly true given Defendant Hill's history of repeat harassment of women at the Company, and the Company's heightened duty to respond to Defendant Hill as a serial harasser.

41.     In light of the insufficient response from HR, Ms. Mashariki attempted to express her concerns to Defendant Hill herself.  The following week, Ms. Mashariki told Defendant Hill that as a woman, she felt uncomfortable with his intimidation and that his conduct made her feel physically unsafe in the workplace.  Defendant Hill half-heartedly apologized, qualifying that she could have avoided the situation if she had just obeyed him.  Following this unremorseful response, Ms. Mashariki again complained to HR and pointed out that Defendant Hill's apology felt like victim blaming, a common response to women who protest harassment.  Ms. Mashariki was particularly concerned because this was not the first time Defendant Hill had tried to intimidate her or other women.  Ms. Mashariki reiterated that Defendant Hill's actions and response made her feel uncomfortable and unsafe in the workplace and expressed concern that the harassment would reoccur.

42.     Viacom and BET should have taken such a complaint seriously, given Defendant Hill's established reputation of inappropriate conduct towards women and his history of making unwelcome, severe, and pervasive comments toward the women around him.  However, the Company and its HR failed to prevent Defendant Hill's habitual discrimination and harassment.

43.     Ms. Mashariki also complained to BET's CEO, Debra Lee, during a one-on-one meeting towards the end of March 2016.

44.     Defendant Hill and the Company's HR then retaliated against Ms. Mashariki.  A few weeks later, in early April 2016, Ms. Mashariki was informed of an HR investigation into her "management style."  Tellingly, HR was not able to provide any specific examples of her allegedly deficient management style beyond the explanation that a few employees had complained about her "tone."  HR confirmed several times that no one had accused Ms. Mashariki of yelling, using inappropriate language, or

1  unprofessional behavior.  Targeting a female leader's "tone" is textbook gender discrimination in the

2  workplace and, as in this case, often fueled by racialized gender stereotypes.

3      45.    Prior to April 2016, despite meeting with Ms. Mashariki every other week, HR never

4  discussed concerns about her management style or any other performance issue.  Similarly, in late March

5  2016, during a one-on-one meeting, Ms. Lee never raised any areas of improvement.  Defendant Hill also

6  never provided Ms. Mashariki with negative feedback, despite having a one-on-one meeting each week

7  with an agenda item specifically dedicated to staff issues.  In fact, when Ms. Mashariki met with Defendant

8  Hill later that week, Defendant Hill told her she was doing a great job and expressed discontent with how

9  HR handled the alleged concerns about Ms. Mashariki.  Defendant Hill made it clear that he did not have

10  any concerns about Ms. Mashariki's performance.   Furthermore, approximately four months earlier,

11  Defendant Hill provided Ms. Mashariki an outstanding performance review. He wrote:

12          Zola has accomplished all that she laid out above and more.  She has helped instill a confidence

13          in the Programming team that has been sorely needed.  Her expertise, her connections, her

14          ability to engage A-list content creators on behalf of BET is exactly what this company needs.

15          Due to the acceleration of our content, Zola had the Hercules-as-octopus, multi-tentacled task

16          of overseeing production of content already in the pipeline, securing new content quickly,

17          assessing and acting on the current staff and understanding (and changing where necessary)

18          BET protocols and processes.  She has been very successful and put BETN in position to thrive

19          in 2017.

20  Indeed, Ms. Mashariki's performance consistently exceeded expectations.

21      46.    On April 17, 2016, Ms. Mashariki submitted written complaints to both Defendant Hill and

22  HR, expressing concern about the disparate treatment and retaliation.  When Ms. Mashariki met with HR,

23  Ms. Lee, and Defendant Hill on May 5, 2016, the Company reiterated that Ms. Mashariki's work-product

24  was outstanding and confirmed that none of the allegations against her had been corroborated.  Ms. Lee

25  also pointed out that complaints among staff about leaders were common at BET.

26      47.    Nevertheless, HR proposed a peer review of Ms. Mashariki and a professional coach

27  despite her recent positive performance review and short tenure at the Company.  Ms. Mashariki informed

28  HR that she already had a professional coach—in fact one of the first things Ms. Mashariki requested of

HR when she joined the Company was a professional coach.  Without support from the Company, Ms. Mashariki paid for a coach herself.

48.     HR's retaliatory performance management initiated a series of pretextual adverse employment actions intended to manage Ms. Mashariki out for reporting Defendant Hill's discriminatory and harassing activities.  Defendant Hill also began asking Ms. Mashariki's direct and indirect reports about her performance in an attempt to solicit negative feedback and shift the focus away from his deficiencies.

49.     The Company's HR, led by Scott Mills, also retaliated against Ms. Mashariki by denying her adequate staffing, preventing her from hiring much-needed staff and replacing staff that departed, while simultaneously reinforcing the impossible goals Defendant Hill imposed on her.  HR also recklessly failed to respond, or failed to adequately respond to Ms. Mashariki's many requests for assistance.

50.     Moreover, prior to taking medical leave, Ms. Mashariki regularly worked late into the night, while simultaneously raising two children independently.  Company leadership and HR knew that Ms. Mashariki's extreme workload needed to be remedied by filling staffing needs; indeed, Ms. Mashariki alerted BET's Head of HR, Cheena Stanley, several times that her team was overworked and that morale was suffering.  HR ignored Ms. Mashariki's requests for additional staffing, hamstringing her in retaliation for her complaint.

51.     HR also refused to allow Ms. Mashariki to recruit and fill open headcount positions on her team that had been pre-approved and funded.  For example, in April 2016, BET's HR and Defendant Hill approved a Senior Vice President of Operations position on Ms. Mashariki's team.  That same month, Ms. Mashariki identified the candidate she wanted to hire for the Operations role.  Ms. Stanley refused to extend the offer to the candidate, repeatedly saying she was waiting to "speak to Scott [Mills]," her supervisor at Viacom.  In late August 2016, Ms. Mashariki was told that Defendant Hill would be taking the SVP of Operations role for his own team.  Defendant Hill did so even though he still had an additional open SVP role that he had not yet filled, and so had no legitimate reason to take Ms. Mashariki's SVP role to make the hire.  As a result, Ms. Mashariki was unfairly required to perform the extra work and take on the roles of her team's vacant positions.

52.     The Company's ineffective HR left Ms. Mashariki dangerously unsupported in other ways as well.  For example, Ms. Mashariki repeatedly alerted HR that she had been told that another female executive was in a "dark place" and asked HR to provide additional support for that executive.  In addition, Ms. Mashariki requested a professional coach for an underperforming new hire.  To Ms. Mashariki's knowledge, HR never acted on Ms. Mashariki's reports.

53.     Despite the incessant interference and marginalization, Ms. Mashariki continued to work diligently on her slate of new shows, which produced impressive testing results without any creative involvement from Defendant Hill.  She also improved internal processes. She organized the Original Programming group into teams and created a "Current Department."  Ms. Mashariki created a timeline for Upfront 2017 immediately following Upfront 2016 and presented the programming content for Upfront 2017 in August 2016, the earliest it had ever been ready at the Company.  Despite the heavy workload, the Original Programming group was working together as a team and morale was improving. During all of this, Defendant Hill continued to undermine and harass Ms. Mashariki while HR continued to insist on its retaliatory performance management.

54.     On November 8, 2016, Ms. Mashariki, through legal counsel, formally complained to Viacom regarding her discrimination and retaliation claims.  The retaliation then escalated.  Defendant Hill attempted to edit Ms. Mashariki's self-assessment in order to downplay her many accomplishments during the performance review process.  Shortly thereafter, Ms. Mashariki received a reduced bonus. Defendant Hill also became increasingly hostile towards Ms. Mashariki following her decision to retain legal counsel.  Defendant Hill subjected Ms. Mashariki to increased surveillance, heightened scrutiny, and additional interference, as well as other unlawful conduct.  Ms. Mashariki continued to work tirelessly as she awaited a formal response from the Company.

**D.      The Company Interfered with Ms. Mashariki's Medical Leave and Escalated Its Retaliation Against Her.**

55.     Ms. Mashariki was diagnosed with early breast cancer on December 15, 2016.   On December 20, 2016, she alerted Defendant Hill and Ms. Lee of her diagnosis.  Ms. Mashariki sought

1   second opinions in January 2017 and was told that she required surgery.  Ms. Mashariki worked up until

2   the date of her surgery on February 6, 2017 and has been on protected medical leave since then.[1]

3       56.    On February 9, 2017, Ms. Mashariki's oncologist diagnosed her with a second, more

4   advanced type of breast cancer which required that she extend her leave and undergo additional treatment

5   and surgeries.  That day, while Ms. Mashariki was already on protected leave, the Company finally

6   responded to Ms. Mashariki's November 2016 complaint.  The Company claimed to have completed an

7   "investigation" into her claims and concluded that it would not make any changes to the Programming

8   group's structure.  In other words, as of February 9, 2017, the Company confirmed it had no plans for any

9   restructuring involving Ms. Mashariki or Defendant Hill.

10      57.    Upon information and belief, while Ms. Mashariki was dealing with her escalating

11  diagnosis and out on protected medial leave, a senior BET executive defamed Ms. Mashariki by telling

12  employees that she was "faking" her condition.  BET employees have confirmed that these untrue and

13  defamatory comments were rampant throughout the Company.

14      58.    These comments can only be reasonably interpreted to insinuate that Ms. Mashariki was

15  faking an illness to avoid meeting the responsibilities of her profession.  The effect of these statements

16  was to injure Ms. Mashariki professionally by suggesting that she was not capable of performing her duties

17  as an executive.  Upon information and belief, senior leadership created these rumors and disparaged her

18  in other ways in an effort to undermine her and push her out.  The Company encouraged these efforts

19  despite Ms. Mashariki's team members confirming her consistently positive leadership.

20      59.    Later, as part of her application for short-term disability ("STD") leave, Ms. Mashariki's

21  surgical oncologist submitted a detailed form, called an Attending Physician statement, to the Company's

22  STD insurance provider, the Unum Group ("Unum"), including her breast cancer diagnosis, treatment

23  codes, and treatment plan.  On March 3, 2017, Unum confirmed that Ms. Mashariki's doctor submitted

24  all the necessary documents required for approval.  Upon information and belief, the Company then

25
    _____
26  [1]Ms. Mashariki went on sick leave starting on February 6, 2017 with an anticipated return-to-work date of February 10, 2017.
    On February 9, 2017, Ms. Mashariki learned that she had a more advanced type of cancer, requiring extended leave.  On
27  February 10, 2017, pursuant to Viacom's policy, Ms. Mashariki's disability leave application was initiated with a new return-
    to-work date of March 1, 2017.  Pursuant to Viacom's policy, the first day of Ms. Mashariki's disability leave was classified
    as the first day of her sick leave on February 6, 2017.  On February 28, 2017, when her condition worsened yet again, Ms.
28  Mashariki's doctors determined a second surgery was necessary and extended her medical leave through April 11, 2017.
    Subsequently, Ms. Mashariki's doctor extended her medical leave through May 8, 2017.

1   interfered with Ms. Mashariki's application by contacting Unum to express doubt about the nature and

2   severity of her medical condition and treatment.  In response, Unum required Ms. Mashariki to submit

3   additional information about her illness, including detailed surgical reports, notes from office visits, and

4   full and detailed pathology reports.

5       60.   An Unum representative further explicitly confirmed that the Company placed Unum in a

6   terrible position and that Unum only subjected Ms. Mashariki to extra steps in the process due to the

7   Company's pressure.  Unum later confirmed that a Viacom lawyer requested and received a copy of Ms.

8   Mashariki's medical records without notifying Ms. Mashariki or obtaining her consent.

9       61.   Defendant Hill also retaliated against Ms. Mashariki when she went out on medical leave.

10   He ordered members of her team not to contact her under any circumstance.  Defendant Hill also began

11   to engage in disparaging, fault-finding, and sabotaging activities.  He encouraged even more negative

12   discussions and views of Ms. Mashariki.  He also interfered with and compromised contracts that Ms.

13   Mashariki worked hard to bring to the Company and indicated to her team that he intended to dismiss

14   several of her development projects.  Defendant Hill spent the entirety of Ms. Mashariki's medical leave

15   suggesting she had committed some malfeasance, leaving her team confused and demoralized.

16       62.   The Company's retaliation following Ms. Mashariki's request for medical leave goes far

17   beyond Defendant Hill's hostility and harassment.  As Ms. Mashariki intended to return to work following

18   her leave, she attempted to keep up with her emails while she was out.  Her doctor approved these limited

19   administrative tasks.  However, the Company attempted to deny Ms. Mashariki access to her emails and

20   its internal systems and rejected an expense report that was being processed while she was on leave (but

21   was submitted well before her medical leave).  The Company also instructed Ms. Mashariki that she could

22   no longer represent BET at all while she was on leave.

23       **E.**    **The Company Wrongfully Terminated Ms. Mashariki While She Was on Medical**
24               **Leave.**

25       63.   Ms. Mashariki's counsel responded to the Company's February 9, 2017 correspondence

26   on February 27, 2017.  The next day, on February 28, 2017, the Company attempted to terminate Ms.

27   Mashariki.  In response, Ms. Mashariki reminded the Company that she was on medical leave, that she

28   had not received written notice of termination per her contract, that the attempted termination came on the

heels of her prior discrimination and retaliation complaints, that Mr. Hill had a conspicuous relationship with the head of Viacom's HR, and that she had performed well for the Company and believed in it.  In light of her response, the Company did not terminate Ms. Mashariki at that time.

64.     Defendant Hill announced he was leaving BET on March 29, 2017, while Ms. Mashariki was on leave.  Upon information and belief, Defendant's Hill's contract was terminated.  Between February 9 and March 29, Viacom and BET went from supporting Defendant Hill to terminating him. This is likely because Defendant Hill's performance suffered when he could no longer appropriate and take credit for Ms. Mashariki's work while she was on leave, nor could he effectively lead Original Programming without her.

65.     On March 29, 2017, while Ms. Mashariki was bedridden and recovering from her second surgery, the Company unexpectedly, and without her consent, falsely announced that along with Defendant Hill, Ms. Mashariki was departing from the network.  Ms. Mashariki remained employed with the Company and intended to return to work on April 11, 2017.  Ms. Mashariki's doctor later extended her medical leave to May 8, 2017, due to medical issues she is still experiencing.

66.     The Company then terminated Ms. Mashariki on April 11, 2017, while she was still on leave, in part because Ms. Mashariki took protected leave.

**F.     The Company's Reckless Announcement Caused a Media Storm and Defamed Ms. Mashariki's Character.**

67.     On March 29, 2017, Ms. Lee made a company-wide announcement about Defendant Hill's resignation.  Her email – entitled "Thank You Stephen Hill"– praised Defendant Hill and listed his contributions and accomplishments.  Defendant Hill alone received credit for one of Ms. Mashariki's productions, *The New Edition Story*—a show he did not see until it was locked and testing spectacularly. Ms. Mashariki's significant contributions and leadership had historically been ignored, as evidenced in this email.  Ms. Lee described Defendant Hill as "one of the leading creative minds in television and music" and his contributions as "invaluable as we worked together to successfully reinvigorate our brand." In short succession, Defendant Hill sent a company-wide email to provide his own farewell commentary.

68.     Later in the day, Ms. Lee sent another company-wide email, announcing the interim Head of Programming and her professional bio.  In this brief email, Ms. Lee falsely claimed that, "Additionally,

1   Zola Mashariki, EVP, and Head of Original Programming, will also be departing the network."   The
2   announcement was quickly publicized by numerous media outlets to the severe detriment of Ms.
3   Mashariki's career, as well as her mental and physical health.

4       69.    The Company's announcement invited speculation into Ms. Mashariki's performance and
5   the mysterious circumstances surrounding her departure.   Several people, including reporters and
6   bloggers, noted that Ms. Mashariki's departure announcement curiously lacked the positive language and
7   details that were contained in Defendant Hill's glowing announcement.   The combined announcement
8   also wrongfully suggests that Ms. Mashariki's departure was related to Defendant Hill's.

9       70.    Following this announcement, Ms. Mashariki reached out to Ms. Lee.   She received no
10  response.   After the Company did not issue a retraction of its false statement that Ms. Mashariki would be
11  departing the network along with Defendant Hill, Ms. Mashariki was inundated with calls, texts, and
12  emails from colleagues seeking clarification while she was still recovering from surgery, causing
13  additional harm.   Because she could not timely respond to all the many inquiries, on March 30, 2017, Ms.
14  Mashariki clarified in an email to her team that, "Stephen's departure is a separate issue from my status
15  at the company."   Ms. Mashariki also explained that she remained a current employee on medical leave
16  with an anticipated return-to-work date.   In response to press inquiries about Ms. Mashariki's email, the
17  Company commented that, "These claims misrepresent the facts and are without merit. We strongly deny
18  any allegation of wrongdoing.   In addition, we will not comment on specific employee matters."   Carlos
19  Greer, *Exec shake-up at BET is 'next-level crazy'*, Page Six, March 31, 2017.   This defamatory response
20  implied that Ms. Mashariki was not a current employee and that her departure was related to Defendant
21  Hill's.

22      71.    The Company later repeated its false statement that Ms. Mashariki was no longer an
23  employee: "BET rep Tracy McGraw, who confirms that Mashariki is no longer with the network, insists
24  that they did nothing wrong."   Anonymous author, *BET cans exec who says she was recovering from*
25  *breast cancer*, New York Daily News, March 31, 2017.

26      72.    In the media storm that ensued, several anonymous "insiders" made comments to the press
27  that supported the Company's implied messaging.   For instance, a network insider informed Page Six that,
28  "[Ms. Mashariki] was terminated as a result of her own performance prior to taking medical leave.   They

1  then allowed her to keep her contract, so she was able to keep her salary and benefits after being diagnosed.

2  She is definitely terminated."  Carlos Greer, *Exec shake-up at BET is 'next-level crazy'*, Page Six, March

3  31, 2017.

4      73.    Such a false and defamatory misrepresentation, coupled with the Company's official

5  statement, portrayed Ms. Mashariki's email as untruthful and provided an alternative fact—that she was

6  already terminated due to performance deficiencies.  Ms. Mashariki had not been terminated at that time,

7  certainly not because of any performance issues, and was not terminated before her medical leave.

8      74.    Throughout this period, the Company has changed its position several times with respect

9  to when and if it terminated Ms. Mashariki.  In addition, Ms. Mashariki's contract requires that any

10  termination notice be in writing.  The written notice Ms. Mashariki received gives notice that she was

11  terminated on April 11, 2017, after the company announced Ms. Mashariki was leaving.  The Company

12  also refused to allow Ms. Mashariki 60 days following that notice to sign a release, as required by her

13  employment agreement.  As of today, May 3, 2017, Ms. Mashariki's picture and title remain on the BET

14  website, alongside corporate photos of Ms. Lee and other senior executives currently employed by BET,

15  while Defendant Hill's picture and title have been removed from the website for several weeks.

16      75.    Ms. Mashariki's mitigation efforts cannot repair the damage caused by the Company's

17  official statement and its silence in response to the anonymous comments made to the press.  The Company

18  has been on notice of the unlawful defamation and corresponding damage and could have taken simple

19  measures to mitigate the damage.  The Company refused to clarify to the press that it never made a formal

20  public statement about Ms. Mashariki's performance, and declined to comment that it does not condone

21  anonymous statements on its behalf.

22
                                                **COUNT I**
23                              **Violation of Title VII, Gender Discrimination**
                                        **42 U.S.C. § 2000e,** *et seq.*
24                              **(Against Defendants Viacom and BET)**

25      76.    Ms. Mashariki re-alleges and incorporates each and every allegation in this Complaint as

26  if fully set forth herein.

27      77.    Defendants Viacom and BET, employers of Ms. Mashariki within the meaning of Title

28  VII, have discriminated against her by treating her differently from, and less preferably than, similarly

situated males, and by subjecting her to adverse employment actions in violation of Title VII.  The adverse employment actions included subjecting Ms. Mashariki to increased scrutiny and denying her opportunities for growth as compared to her male colleagues; denying Ms. Mashariki adequate staffing and resources provided to her male colleagues; denying her equal opportunity for promotion and pay increases compared to similarly situated male employees; and by discriminatorily paying her less than similarly situated male employees who performed work requiring similar skill, effort, and responsibility.

78.     Defendants' policies, practices and procedures have produced a disparate impact on Ms. Mashariki with respect to the terms and conditions of her employment.

79.     Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Ms. Mashariki, entitling her to punitive damages.

80.     By reason of the continuous nature of Defendants' discriminatory conduct, which persisted throughout her employment, Ms. Mashariki is entitled to application of the continuing violations doctrine to all violations alleged herein.

81.     As a result of Defendants' conduct alleged in this Complaint, Ms. Mashariki has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, including interest.

82.     By reason of Defendants' discrimination, Ms. Mashariki is entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

83.     As a further result of Defendants' unlawful conduct, Ms. Mashariki has suffered and continues to suffer, *inter alia*, impairment to her name and reputation, humiliation, embarrassment, emotional and physical distress, and mental anguish.  Ms. Mashariki is entitled to recover damages for such injuries from Defendants under Title VII.

84.     Attorneys' fees and costs should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT II**
**Violation of Title VII, Hostile Work Environment**
**42 U.S.C. § 2000e, *et seq.***
**(Against All Defendants)**

85.     Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

86. Throughout Ms. Mashariki's employment, Defendants subjected her to unwelcome comments, conduct, and actions that were severe or pervasive because of her gender, in violation of Title VII. A reasonable employee in Ms. Mashariki's circumstances would have considered the work environment to be hostile or abusive, and Ms. Mashariki perceived her work environment to be hostile and abusive.

87. Ms. Mashariki's assigned supervisor, Defendant Hill, engaged in conduct that created the unwelcome and severe or pervasive hostile work environment.

88. Viacom has violated its heightened legal duty to prevent harassment committed by serial harassers.

89. The hostile work environment at BET altered the terms and conditions of Ms. Mashariki's employment and had the purpose or effect of unreasonably interfering with her ability to perform her work duties.

90. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.

91. By reason of the continuous nature of Defendants' discriminatory conduct, which persisted throughout the employment of Ms. Mashariki, she is entitled to application of the continuing violations doctrine to all violations alleged herein.

92. As a result of Defendants' conduct alleged in this complaint, Ms. Mashariki has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages including humiliation, embarrassment, emotional and physical distress, and mental anguish.

93. Attorneys' fees and costs should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT III**
**Violation of Title VII, Retaliation**
**42 U.S.C. § 2000e-3(a), 42 U.S.C. § 2000e-5(f)(3)**
**(Against Defendants Viacom and BET)**

94. Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

95. Ms. Mashariki engaged in protected activity that included, but is not limited to,

complaining to BET and Viacom about Defendant Hill's discrimination.  She complained to Defendant Hill, to HR at BET through a SVP, to others within HR, and to the CEO of BET.

96.    Defendants attempted to terminate and announced the termination of Ms. Mashariki's employment in retaliation for her discrimination complaints.

97.    Defendants also retaliated against Ms. Mashariki by, *inter alia*; initiating a baseless HR investigation into her "management style;" attempting to edit Ms. Mashariki's self-assessment during the performance review process to downplay her accomplishments; and reducing her bonus payment. Defendants further retaliated against Ms. Mashariki by facilitating and maintaining an environment in which Defendant Hill and others engaged in acts intended to humiliate and demean her, including subjecting her to surveillance, heightened scrutiny, and additional interference.   These adverse employment actions materially and adversely changed Ms. Mashariki's overall terms and conditions of employment.

98.    Defendants' retaliatory acts against Ms. Mashariki were a direct and proximate result of her protected activities.

99.    A reasonable employee would find Defendants' retaliatory acts materially adverse and such acts would dissuade a reasonable person from making or supporting a charge of discrimination.

100.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.

101.    Defendants' actions and failures to act have caused Ms. Mashariki to suffer harm, including without limitation lost earnings, lost benefits, and other severe financial losses, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

102.    Ms. Mashariki is therefore entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

103.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT IV**
**Violation of Title VII, Wrongful Termination**
**(Against Defendants Viacom and BET)**

104.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

105.    Defendants terminated Ms. Mashariki's employment.  The Company did so because of her gender and in retaliation for her discrimination complaints.

106.    Defendants' wrongful termination of Ms. Mashariki was a direct, proximate, and pretextual result of gender discrimination and her protected activities.

107.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.

108.    Defendants attempted and announced wrongful termination of Ms. Mashariki has caused her to suffer harm, including without limitation lost earnings, lost benefits, and other severe financial losses, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

109.    Ms. Mashariki is therefore entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

110.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT V**
**FMLA Violation, Interference**
**Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.***
**(Against Defendants Viacom and BET)**

111.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

112.    Under the FMLA, an employee must be restored by the employer to the same position held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

113.    Ms. Mashariki was eligible for FMLA leave because she had a serious health condition. She provided appropriate notice of her need to take protected leave to Defendants Viacom and BET, and took protected leave.

114.    Defendants Viacom and BET refused to return Ms. Mashariki to the same or an equivalent position.  To the contrary, Defendants attempted to terminate and announced the termination of Ms. Mashariki's employment while she was on leave.  Ms. Mashariki's taking of protected leave was a factor in the Company's decision to terminate her.

115.    Defendants' conduct has been intentional, deliberate, and willful.

116.   Defendants' actions and failures to act have caused Ms. Mashariki to suffer harm, including without limitation lost earnings, lost benefits, and other severe financial losses.

117.   Because of Defendants' conduct, Ms. Mashariki is entitled to all legal and equitable remedies available under the FMLA, including an award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 2617.

**COUNT VI**
**FMLA Violation, Retaliation**
**Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.***
**(Against Defendants Viacom and BET)**

118.   Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

119.   Ms. Mashariki was eligible for medical leave under the FMLA.

120.   Ms. Mashariki was eligible for FMLA leave because she had a serious health condition. She provided appropriate notice of her need to take protected leave to Defendants Viacom and BET, and took protected leave.

121.   Defendants then retaliated against Ms. Mashariki for taking medical leave by, *inter alia*: interfering with Ms. Mashariki's application for short-term disability; preventing team members from contacting Ms. Mashariki; engaging in disparaging, fault-finding, and sabotaging activities; denying Ms. Mashariki access to BET systems necessary for her to complete her work; interfering with doctor-approved work; instructing her not to represent the Company while on leave; and ultimately terminating Ms. Mashariki.  Ms. Mashariki's taking leave was a motivating factor in Viacom and BET's decision to take these adverse employment actions.

122.   Defendants' conduct has been intentional, deliberate, and willful.

123.   Defendants' actions and failures to act have caused Ms. Mashariki to suffer harm, including without limitation lost earnings, lost benefits, and other severe financial losses.

124.   Because of Defendants' conduct, Ms. Mashariki is entitled to all legal and equitable remedies available for violations of the FMLA, including an award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 2617.

**COUNT VII**
**Denial of Equal Pay for Equal Work**
**Fair Labor Standards Act of 1938,** *as amended by* **The Equal Pay Act, 29 U.S.C. §§ 206,** *et seq.*
**(Against Defendants Viacom and BET)**

125.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

126.    Defendants discriminated against Ms. Mashariki by paying her less than similarly-situated male colleagues performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

127.    The differential in pay between Ms. Mashariki and her male comparators was not due to seniority, merit, quantity, or quality of production, but was due to gender.

128.    Defendants caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the EPA.   Moreover, the foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

129.    As a result of Defendants' conduct alleged in this Complaint, Ms. Mashariki has suffered and will continue to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

130.    By reason of Defendants' discrimination, Ms. Mashariki is entitled to all legal and equitable remedies available for violations of the EPA including liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

131.    Attorneys' fees should be awarded under 29 U.S.C. § 216(b).

**COUNT VIII**
**Disparate Treatment – Gender Discrimination**
**California Fair Employment and Housing Act, Cal. Govt. Code section 12940** *et seq.*
**(Against All Defendants)**

132.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

133.    Throughout Ms. Mashariki's employment, Defendants subjected Ms. Mashariki to adverse employment actions because of her gender, in violation of the FEHA.   The adverse employment actions

included subjecting Ms. Mashariki to increased scrutiny and denying her opportunities for growth as compared to her male colleagues; denying Ms. Mashariki adequate staffing and resources provided to her male colleagues; denying her equal opportunity for promotion and pay increases compared to similarly situated male employees; and by discriminatorily paying her less than similarly situated male employees who performed work requiring similar skill, effort, and responsibility.

134. Ms. Mashariki's gender was a substantial motivating reason for Defendants' adverse employment actions. Defendant Hill's discrimination against Ms. Mashariki was substantially motivated by her gender, and Defendants Viacom and BET relied on information provided by Defendant Hill, whose objective was to cause adverse employment actions against Ms. Mashariki. The information provided by Defendant Hill was a substantial motivating reason for Defendants Viacom and BET's decision to subject Ms. Mashariki to the adverse employment actions described above.

135. Defendants' conduct has been deliberate, willful, oppressive, malicious, fraudulent, and conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages. The adverse employment action decisions were made, approved, and ratified by officers and managing agents of Defendants Viacom and BET, including Defendant Stephen Hill and EVP of HR and Administration Scott Mills.

136. Defendant Hill and Scott Mills were officers, directors, and/or managing agents of Defendants Viacom and BET who were acting on behalf of Viacom and BET at all relevant times and with respect to all the adverse actions against Ms. Mashariki. Jointly and individually, they exercised substantial independent authority and judgment in their corporate decision-making through their participation in and approval of the adverse employment actions against Ms. Mashariki.

137. By reason of the continuous nature of Defendants' discriminatory conduct, which persisted throughout the employment of Ms. Mashariki, she is entitled to application of the continuing violations doctrine to all violations alleged herein.

138. As a result of Defendants' conduct alleged in this complaint, Ms. Mashariki has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

**COUNT IX**
**Hostile Work Environment**
**California Fair Employment and Housing Act, Cal. Govt. Code section 12940 *et seq.***
**(Against All Defendants)**

139.     Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

140.     Throughout Ms. Mashariki's employment, Defendants subjected her to unwelcome comments, conduct, and actions that were severe or pervasive because of her gender in violation of the Title VII.  A reasonable employee in Ms. Mashariki's circumstances would have considered the work environment to be hostile or abusive, and Ms. Mashariki perceived her work environment to be hostile and abusive.

141.     Ms. Mashariki's assigned supervisor, Defendant Hill, engaged in conduct that created the unwelcome and severe or pervasive hostile work environment.

142.     The hostile work environment at BET altered the terms and conditions of Ms. Mashariki's employment and had the purpose or effect of unreasonably interfering with her ability to perform her work duties.

143.     Defendants' conduct has been deliberate, willful, oppressive, malicious, fraudulent, and conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.  The hostile work environment was created, approved, and ratified by officers and managing agents of Defendants Viacom and BET, including Defendant Stephen Hill and EVP of HR and Administration Scott Mills.

144.     Defendant Hill and Scott Mills were officers, directors, and/or managing agents of Defendants Viacom and BET who were acting on behalf of Viacom and BET at all relevant times and with respect to hostile work environment for Ms. Mashariki.  Jointly and individually, they exercised substantial independent authority and judgment in their corporate decision making through their participation in and approval of the hostile work environment.

145.     By reason of the continuous nature of Defendants' discriminatory conduct, which persisted throughout the employment of Ms. Mashariki, she is entitled to application of the continuing violations doctrine to all violations alleged herein.

146.     As a result of Defendants' conduct alleged in this complaint, Ms. Mashariki has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost future

employment opportunities, other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

## COUNT X
### Retaliation
### California Fair Employment and Housing Act, Cal. Govt. Code section 12940(h)
### (Against Defendants Viacom and BET)

147.   Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

148.   Ms. Mashariki engaged in protected activity that included, but is not limited to, complaining to BET about Defendant Hill's gender discrimination.  She complained directly to Defendant Hill, to HR, and to the CEO of BET.  She also complained through her attorneys to the Company's attorneys.

149.   Defendants attempted to terminate and announced the termination of Ms. Mashariki's employment in retaliation for her discrimination complaints.

150.   Defendants also retaliated against Ms. Mashariki by, *inter alia*; initiating a baseless HR investigation into her "management style;" attempting to edit Ms. Mashariki's self-assessment during the performance review process to downplay her accomplishments; and reducing her bonus.  Defendants further retaliated against Ms. Mashariki by facilitating and maintaining an environment in which Defendant Hill and others engaged in acts intended to humiliate and demean her, including subjecting her to surveillance, heightened scrutiny, and additional interference.  These adverse employment actions materially and adversely changed Ms. Mashariki's overall terms and conditions of employment.

151.   Defendants' retaliatory acts against Ms. Mashariki were a direct and proximate result of her protected activities.

152.   A reasonable employee would find Defendants' retaliatory acts materially adverse and such acts would dissuade a reasonable person from making or supporting a charge of discrimination.

153.   Defendants' conduct has been deliberate, willful, oppressive, malicious, fraudulent, and conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.  The retaliatory adverse employment action decisions were made, approved, and ratified by officers and managing agents

of Defendants Viacom and BET, including Defendant Stephen Hill and EVP of HR and Administration, Scott Mills.

154.    Defendant Hill and Scott Mills were officers, directors, and/or managing agents of Defendants Viacom and BET, who were acting on behalf of Viacom and BET at all relevant times and with respect to all the retaliatory adverse actions against Ms. Mashariki.  Jointly and individually, they exercised substantial independent authority and judgment in their corporate decision making through their participation in and approval of the retaliatory adverse employment actions against Ms. Mashariki.

155.    Defendants' actions and failures to act have caused Ms. Mashariki to suffer harm, including without limitation lost earnings, lost benefits, and other severe financial losses, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

## COUNT XI
### Failure to Prevent Harassment, Discrimination, and Retaliation
### California Fair Employment and Housing Act, Cal. Govt. Code section 12940(k)
### (Against Defendants Viacom and BET)

156.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

157.    Ms. Mashariki was an employee of Defendants Viacom and BET, providing services under a contract with BET.

158.    During the course of her employment, Ms. Mashariki was subjected to harassment, discrimination, and retaliation by Defendant Hill and others at BET.

159.    Despite Ms. Mashariki's complaints about the harassment, discrimination, and retaliation she faced, Defendants Viacom and BET failed to take all reasonable steps to prevent and remedy the conduct of Defendant Hill and others at BET.  To the contrary, Viacom and BET empowered Defendant Hill and other male employees to harass, discriminate against, and retaliate against Ms. Mashariki.

160.    Defendants' conduct has been deliberate, willful, oppressive, malicious, fraudulent, and conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.  The adverse employment action decisions were made, approved, and ratified by officers and managing agents of Defendants Viacom and BET, including Defendant Stephen Hill and EVP of HR and Administration, Scott Mills.

161.    Defendant Hill and Scott Mills were officers, directors, and/or managing agents of Defendants Viacom and BET, who were acting on behalf of Viacom and BET at all relevant times and with respect to all the adverse actions against Ms. Mashariki.  Jointly and individually, they exercised substantial independent authority and judgment in their corporate decision-making through their participation in and approval of the adverse employment actions against Ms. Mashariki.

162.    By reason of the continuous nature of Defendants' discriminatory conduct, which persisted throughout the employment of Ms. Mashariki, she is entitled to application of the continuing violations doctrine to all violations alleged herein.

163.    As a result of Defendants' conduct alleged in this complaint, Ms. Mashariki has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

**COUNT XII**
**Wrongful Termination**
**California Fair Employment and Housing Act, Cal. Govt. Code section 12940(a)**
**(Against Defendants Viacom and BET)**

164.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

165.    Defendants terminated Ms. Mashariki's employment.  The Company did so because of her gender and in retaliation for her discrimination complaints.

166.    Defendants' wrongful termination of Ms. Mashariki was a direct, proximate and pretextual result of gender discrimination and her protected activities.

167.    As a result of Defendants' conduct alleged in this complaint, Ms. Mashariki has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

168.    Defendants' conduct has been deliberate, willful, oppressive, malicious, fraudulent, and conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.  The decision

1  to wrongfully terminate Ms. Mashariki was made, approved, and ratified by officers and managing agents

2  of Defendants Viacom and BET, including Defendant Stephen Hill and CEO Debra Lee.

3      169.    Defendant Hill and Debra Lee were officers, directors, and/or managing agents of

4  Defendants Viacom and BET, who were acting on behalf of Viacom and BET at all relevant times and

5  with respect to all the retaliatory adverse actions against Ms. Mashariki.  Jointly and individually, they

6  exercised substantial independent authority and judgment in their corporate decision-making through their

7  participation in and approval of the retaliatory adverse employment actions against Ms. Mashariki.

8

9                              **COUNT XIII**
                    **Violation of CFRA Rights, Interference**
10       **California Family Rights Act, Cal. Govt. Code section 12945.1** *et seq.*
                      **(Against Defendants Viacom and BET)**

11     170.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this

12  Complaint.

13     171.    Ms. Mashariki was eligible for medical leave under the CFRA.

14     172.    Ms. Mashariki requested and took leave for her own serious health condition that made her

15  temporarily unable to perform the functions of her job with BET.

16     173.    Ms. Mashariki provided reasonable notice to Defendants of her need for medical leave,

17  including its expected timing and length.

18     174.    Defendants refused to return Ms. Mashariki to the same or a comparable job when her

19  medical leave ended.  Indeed, Defendants attempted to terminate and announced the termination of Ms.

20  Mashariki's employment while she was still on medical leave.

21     175.    Ms. Mashariki's taking of protected leave was a negative factor in Defendants Viacom and

22  BET's decision to terminate her.

23     176.    As a result of Defendants' conduct alleged in this complaint, Ms. Mashariki has suffered

24  and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost future

25  employment opportunities, other financial loss, as well as humiliation, embarrassment, emotional and

26  physical distress, and mental anguish.

27     177.    Defendants' conduct has been deliberate, willful, oppressive, malicious, fraudulent, and

28  conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.  The decision

to refuse to return Ms. Mashariki to her position was made, approved, and ratified by officers and managing agents of Defendants Viacom and BET, including Defendant Stephen Hill and EVP of HR and Administration, Scott Mills.

178.    Defendant Hill and Scott Mills were officers, directors, and/or managing agents of Defendants Viacom and BET, who were acting on behalf of Viacom and BET at all relevant times and with respect to the decision to refuse to return Ms. Mashariki to her position.  Jointly and individually, they exercised substantial independent authority and judgment in their corporate decision making through their participation in and approval of the decision to refuse to return Ms. Mashariki to her position.

## COUNT XIV
### Retaliation for Exercising CFRA Rights
### California Family Rights Act, Cal. Govt. Code section 12945.2
### (Against Defendants Viacom and BET)

179.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

180.    Ms. Mashariki was eligible for medical leave under the CFRA.

181.    Ms. Mashariki requested and took leave for her own serious health condition that made her temporarily unable to perform the functions of her job with BET.

182.    Defendants then retaliated against Ms. Mashariki for taking medical leave by, *inter alia*: interfering with Ms. Mashariki's application for short-term disability; preventing team members from contacting Ms. Mashariki; engaging in disparaging, fault-finding, and sabotaging activities; denying Ms. Mashariki access to BET systems necessary for her to complete her work; interfering with doctor-approved work; instructing her not to represent the Company while on leave;  and ultimately terminating Ms. Mashariki.  Viacom and BET took these adverse employment actions because Ms. Mashariki had requested and taken medical leave.

183.    As a result of Defendants' conduct alleged in this complaint, Ms. Mashariki has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

184.    Defendants' conduct has been deliberate, willful, oppressive, malicious, fraudulent, and conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.  The retaliatory adverse employment action decisions were made, approved, and ratified by officers and managing agents of Defendants Viacom and BET, including Defendant Stephen Hill and EVP of HR and Administration, Scott Mills.

185.    Defendant Hill and Scott Mills were officers, directors, and/or managing agents of Defendants Viacom and BET, who were acting on behalf of Viacom and BET at all relevant times and with respect to all the retaliatory adverse actions against Ms. Mashariki.  Jointly and individually, they exercised substantial independent authority and judgment in their corporate decision-making through their participation in and approval of the retaliatory adverse employment actions against Ms. Mashariki.

## COUNT XV
### Denial of Equal Pay for Substantially Similar Work
### California Equal Pay Act, *as amended by* the California Fair Pay Act, Cal. Labor Code section 1197.5 *et seq.*
### (Against Defendants Viacom and BET)

186.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

187.    Defendants have discriminated against Ms. Mashariki by paying her less than similarly-situated male colleagues performing substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

188.    The differential in pay between Ms. Mashariki and her male comparators was not due to seniority, merit, the quantity or quality of production, or a bona fide factor other than sex, such as education, training, or experience, but was due to gender.  In the alternative, to the extent that Defendants' relied upon one or more of these factors, said factor(s) were not reasonably applied and did not account for the entire wage differential.

189.    Defendants caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex.  Moreover, the foregoing conduct constitutes a willful violation; therefore, a three-year statute of limitations applies to such violations, pursuant to Cal. Lab. Code § 1197.5(h).

190.    As a result of Defendants' conduct alleged in this Complaint and Defendants' willful, knowing, and intentional discrimination, Ms. Mashariki has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

191.    Ms. Mashariki is therefore entitled to all legal and equitable remedies, including doubled compensatory awards for all willful violations.

192.    Attorneys' fees should be awarded under California Labor Code § 1197.5(g).

## COUNT XVI
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against Defendants Viacom and BET)

193.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this Complaint.

194.    Defendants and Ms. Mashariki entered into an employment relationship by contract that specified that Ms. Mashariki would remain employed until April 2018.

195.    Ms. Mashariki substantially and successfully performed all of her job duties under the employment contract.

196.    Defendants prevented Ms. Mashariki from receiving the benefits that she was entitled to receive under the contract by *inter alia,* reducing her bonuses; interfering with her ability to exercise her authority over her department; unfairly taking credit for her accomplishments; excluding her from decision-making conversations vital to the management of her department; withholding critical information from her; failing to provide written notice of termination as required by the contract; failing to provide Ms. Mashariki with 60 days to consider the notice of termination, as required by the contract; and falsely suggesting that Ms. Mashariki had been terminated for cause.

197.    Defendants' conduct was a failure to act fairly and in good faith with respect to their employment relationship with Ms. Mashariki.

198.    As a result of Defendants' conduct alleged in this complaint, Ms. Mashariki has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

1
2

**COUNT XVII**
**Wrongful Discharge in Violation of Public Policy**
**(Against Defendants Viacom and BET)**

3      199.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this
4  Complaint.

5      200.    Ms. Mashariki exercised her statutory rights and privileges under the FEHA and the CFRA.
6  Ms. Mashariki also reported violations of the FEHA to Defendants.

7      201.    In response, Defendants Viacom and BET attempted to terminate and announced the
8  termination of Ms. Mashariki's employment.

9      202.    Ms. Mashariki's exercise of her rights under the FEHA and the CFRA, combined with her
10  reporting of FEHA violations, were a motivating reason for the attempted and alleged discharge of Ms.
11  Mashariki.

12      203.    As a result of Defendants' conduct alleged in this complaint, Ms. Mashariki has suffered
13  and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost future
14  employment opportunities, other financial loss, as well as humiliation, embarrassment, emotional and
15  physical distress, and mental anguish.

16      204.    Defendants' conduct has been deliberate, willful, oppressive, malicious, fraudulent, and
17  conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.  The decision
18  to wrongfully terminate Ms. Mashariki was made, approved, and ratified by officers and managing agents
19  of Defendants Viacom and BET, including Defendant Stephen Hill and CEO Debra Lee.

20      205.    Defendant Hill and Debra Lee were officers, directors, and/or managing agents of
21  Defendants Viacom and BET, who were acting on behalf of Viacom and BET at all relevant times and
22  with respect to all the retaliatory adverse actions against Ms. Mashariki.  Jointly and individually, they
23  exercised substantial independent authority and judgment in their corporate decision making through their
24  participation in and approval of the retaliatory adverse employment actions against Ms. Mashariki.

25

**COUNT XVIII**
**Defamation**
**(Against Defendants Viacom and BET)**

26
27

28      206.    Ms. Mashariki re-alleges and incorporates each and every allegation contained in this

COMPLAINT
-36-

Complaint.

207.    Defendants Viacom and BET harmed Ms. Mashariki by falsely telling reporters that Ms. Mashariki's March 30, 2017 email to her team misrepresented the facts and were without merit. Defendants Viacom and BET also failed to clarify and/or mitigate false statements that suggested that Ms. Mashariki had been terminated because of her performance, despite being on notice of the unlawful defamation and corresponding damage.

208.    Defendants Viacom and BET made these statements to members of the press, as well as within the Company, and made clear that the statements were intended to be about Ms. Mashariki.  Upon information and belief, the people who read or heard the comments of Defendants Viacom and BET reasonably believed them to be about Ms. Mashariki.

209.    The comments of Defendants Viacom and BET can only be reasonably interpreted to mean that Ms. Mashariki had been terminated in connection with Defendant Hill's departure and because of her performance.  Those statements are all false.  The effect of the statements of Defendants Viacom and BET was to injure Ms. Mashariki with respect to her profession by suggesting that she was not capable of performing the duties of her office and had been terminated as a result.

210.    Because of the statements of Defendants Viacom and BET, Ms. Mashariki has suffered harm, including without limitation harm to her professional reputation, and other severe financial losses, harm to her personal reputation, as well as humiliation, mortification, emotional and physical distress, and mental anguish.

211.    Defendants' conduct has been deliberate, willful, oppressive, malicious, fraudulent, and conducted in callous disregard of Ms. Mashariki's rights, entitling her to punitive damages.  The decision to defame Ms. Mashariki was made, approved, and ratified by officers and managing agents of Defendants Viacom and BET, including Defendant Stephen Hill, BET CEO Debra Lee, and SVP and Associate General Counsel Amy Dow.

212.    Defendant Hill, Debra Lee, and Amy Dow were officers, directors, and/or managing agents of Defendants Viacom and BET, who were acting on behalf of Viacom and BET at all relevant times and with respect to the defamation of Ms. Mashariki.  Jointly and individually, they exercised substantial

1  independent authority and judgment in their corporate decision-making through their participation in and

2  approval of the defamation of Ms. Mashariki.

3

4  **PRAYER FOR RELIEF**

5  Wherefore, Ms. Mashariki requests the following relief:

6  a.    Acceptance of jurisdiction of this case;

7  b.    A declaratory judgment that the practices complained of herein are unlawful and

8        violate, among other laws, 42 U.S.C. § 2000(e) *et seq.*, as amended; 29 U.S.C.

9        § 2601, *et seq.*; 29 U.S.C. § 206, *et seq.*; California Government Code § 12940 *et*

10       *seq.*; California Government Code section 12945.1 *et seq.*; and Cal. Labor Code

11       section 1197.5 *et seq.*;

12  c.    A permanent injunction against Defendants and their partners, officers, owners, agents,

13       successors, employees, representatives and any and all persons acting in concert with

14       them, from engaging in any further unlawful practices, policies, customs and usages

15       set forth herein;

16  d.    An Order requiring Defendants Viacom and BET to initiate and implement programs

17       that (i) remedy the hostile work environment at BET; (ii) ensure prompt, remedial

18       action regarding all claims of harassment; and (iii) eliminate the continuing effects of

19       the discrimination and retaliatory practices described herein;

20  e.    An Order restoring Plaintiff to her rightful position at the Company, or in lieu of

21       reinstatement, an order for front pay benefits;

22  f.    Nominal damages;

23  g.    Back pay, front pay, lost benefits, liquidated damages, and other damages for lost

24       compensation and job benefits suffered by Plaintiff in accordance with proof presented

25       at trial;

26  h.    Compensatory damages in an amount in accordance with proof presented at trial;

27  i.    Exemplary and punitive damages in an amount commensurate with Defendants' ability

28       to pay and to deter future conduct;

j.      An award of litigation costs and expenses, including reasonable attorneys' fees to the

Plaintiff;

k.      Pre-judgment and post-judgment interest; and

l.      Such other and further relief as the Court may deem just and proper.


## V.      DEMAND FOR JURY TRIAL

Ms. Mashariki demands a trial by jury of all issues triable of right to a jury.


Dated: May 3, 2017                                   Respectfully Submitted,

_____

Felicia Medina

Felicia Medina
Jennifer Orthwein
MEDINA ORTHWEIN LLP

David Sanford
Xinying Valerian
Kevin Love Hubbard
SANFORD HEISLER SHARP, LLP

*Attorneys for Plaintiff Zola Mashariki*